# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BRUCE HUBBARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. |
| ) | |
| SWIFT TRANSPORTATION CO. OF ) | |
| ARIZONA, LLC, MILLWOOD, INC., and ) | Jury Trial Demanded |
| NIAGARA BOTTLING, LLC, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT AT LAW

NOW COMES the Plaintiff BRUCE HUBBARD by and through his attorneys, the Law Office of Jeffrey Friedman, P.C., and complains of Defendants SWIFT TRANSPORTATION CO. OF ARIZONA, LLC, MILLWOOD, INC., and NIAGARA BOTTLING, LLC, and in support states as follows:

1.  Jurisdiction of this Court is conferred pursuant to the principles of diversity jurisdiction. 28 U.S.C. § 1332.

2.  Plaintiff Bruce Hubbard ("Hubbard") is and at all times relevant hereto was a resident of Antioch, Illinois, within this District.

3.  Defendant Swift Transportation Co. of Arizona, LLC ("Swift" or the "Carrier") is an international transportation company providing freight transportation services to and from all major cities the United States, Canada, and Mexico.

4.  Swift has its principal place of business in Orlando, Florida.

5.  Swift does business within the Northern District of Illinois.

6. Defendant Millwood, Inc. ("Millwood" or the "Shipper") is a leading provider of pallets, unit load and material handling systems, with over 1,500 employees located in twenty-nine facilities across the country.

7. Millwood has its principal place of business in Vienna, Ohio.

8. Millwood does business within the Northern District of Illinois.

9. Defendant Niagara Bottling, LLC ("Niagara") is the largest, private-label bottled water supplier in the United States.

10. Niagara has its principal place of business in Ontario, California.

11. Niagara does business within the Northern District of Illinois.

12. At all relevant times hereto, the Plaintiff was employed by Lazer Spot, a company that provides third-party yard management services to various companies.

13. The occurrence, which is the subject of this Complaint, occurred at a facility owned and operated by Niagara (the "Niagara Facility").

14. On September 7, 2017, Plaintiff was assigned to work as a spotter truck driver at the Niagara Facility.

15. On September 7, 2017, Swift delivered a load of Chep pallets (referred to herein as the "Pallets") via a Swift trailer (the "Trailer") from a Millwood facility to the Niagara Facility.

16. Upon information and belief, the load of Pallets was a "sealed" load, meaning the Trailer doors were not to be opened by the Swift driver once the cargo left the Millwood facility.

17. On or about September 7, 2017, a Swift driver parked the Trailer at the Niagara Facility, to be later transported by the Plaintiff to the dock to be unloaded.

18. On September 7, 2017, Plaintiff drove the Trailer approximately ten feet in front

of the unloading dock, exited the cab of the Trailer, and proceeded to the rear of the Trailer to open the Trailer doors, as they cannot be opened from inside the dock.

19. At said time and place, while opening the Trailer doors, Plaintiff used a safety harness in accordance with all applicable safety guidelines.

20. Plaintiff proceeded to open the Trailer's right door first and secured it to the side of the Trailer so it would not swing back and close.

21. As Plaintiff then proceeded to open the Trailer's left door, the front row of Pallets (which were stacked on top of each other to the top of the Trailer ceiling) toppled over, fell, and struck the Plaintiff.

22. On the date of the accident, the Pallets that struck the Plaintiff were not reasonably or safely secured within the Trailer.

23. At all relevant times hereto, Plaintiff followed all applicable safety rules and exercised ordinary care and caution for his own safety.

24. The Federal Motor Carrier Safety Administration (FMCSA) has issued the following rules and regulations, referred to as the Federal Motor Carrier Safety Regulations (FMCSR), requiring that cargo be secured and immobilized so as to prevent it from falling out of the trailer:

> **§ 393.100 Which types of commercial motor vehicles are subject to the cargo securement standards of this subpart, and what general requirements apply?**
>
> **(a) *Applicability.*** The rules in this subpart are applicable to trucks, truck tractors, semitrailers, full trailers, and pole trailers.
>
> **(b) *Prevention against loss of load.*** Each commercial motor vehicle must, when transporting cargo on public roads, be loaded and equipped, and the cargo secured, in accordance with this subpart to prevent the cargo from leaking, spilling, blowing or falling from the motor vehicle.

**(c)** *Prevention against shifting of load.* Cargo must be contained, immobilized or secured in accordance with this subpart to prevent shifting upon or within the vehicle to such an extent that the vehicle's stability or maneuverability is adversely affected.

49 CFR 393.100.

**§ 393.106 What are the general requirements for securing articles of cargo?**

*(a) Applicability*. The rules in this section are applicable to the transportation of all types of articles of cargo, except commodities in bulk that lack structure or fixed shape (e.g., liquids, gases, grain, liquid concrete, sand, gravel, aggregates) and are transported in a tank, hopper, box, or similar device that forms part of the structure of a commercial motor vehicle. The rules in this section apply to the cargo types covered by the commodity-specific rules of § 393.116 through § 393.136. The commodity-specific rules take precedence over the general requirements of this section when additional requirements are given for a commodity listed in those sections.

*(b) General.* Cargo must be firmly immobilized or secured on or within a vehicle by structures of adequate strength, dunnage or dunnage bags, shoring bars, tiedowns or a combination of these.

*(c) Cargo placement and restraint.*

> (1) Articles of cargo that are likely to roll must be restrained by chocks, wedges, a or other equivalent means to prevent rolling. The means of preventing rolling must not be capable of becoming unintentionally unfastened or loose while the vehicle is in transit.
>
> (2) Articles or cargo placed beside each other and secured by transverse tiedowns must either:
>
>> (i) Be placed in direct contact with each other, or
>>
>> (ii) Be prevented from shifting towards each other while in transit.

49 CFR 393.106(a-c).

**§ 392.9 Inspection of cargo, cargo securement devices and systems.**

*(a) General.* A driver may not operate a commercial motor vehicle and a motor carrier may not require or permit a driver to operate a commercial motor vehicle unless -

> (1) The commercial motor vehicle's cargo is properly distributed and adequately secured as specified in §§ 393.100 through 393.136 of this subchapter.

\* \* \*

*(b) Drivers of trucks and truck tractors*. Except as provided in paragraph (b)(4) of this section, the driver of a truck or truck tractor must -

(1) Assure himself/herself that the provisions of paragraph (a) of this section have been complied with before he/she drives that commercial motor vehicle;

(2) Inspect the cargo and the devices used to secure the cargo within the first 50 miles after beginning a trip and cause any adjustments to be made to the cargo or load securement devices as necessary, including adding more securement devices, to ensure that cargo cannot shift on or within, or fall from the commercial motor vehicle; and

(3) Reexamine the commercial motor vehicle's cargo and its load securement devices during the course of transportation and make any necessary adjustment to the cargo or load securement devices, including adding more securement devices, to ensure that cargo cannot shift on or within, or fall from, the commercial motor vehicle. Reexamination and any necessary adjustments must be made whenever -

(i) The driver makes a change of his/her duty status; or

(ii) The commercial motor vehicle has been driven for 3 hours; or

(iii) The commercial motor vehicle has been driven for 150 miles, whichever occurs first.

(4) The rules in this paragraph (b) do not apply to the driver of a sealed commercial motor vehicle who has been ordered not to open it to inspect its cargo or to the driver of a commercial motor vehicle that has been loaded in a manner that makes inspection of its cargo impracticable.

49 CFR 392.9.

25. The FMCSA provides further guidance to motor carriers (here, Swift) with respect to determining that cargo has been safely loaded and secured when a shipper has loaded and sealed the trailer:

**How may the motor carrier determine safe loading when a shipper has loaded and sealed the trailer?**

**Guidance:** Under these circumstances, a motor carrier may fulfill its responsibilities for proper loading a number of ways. Examples are:

5

      a. Arrange for supervision of loading to determine compliance; or

      b. Obtain notation on the connecting line freight bill that the lading was properly loaded; or

      c. Obtain approval to break the seal to permit inspection.

*See* FMCSA, *Interpretations and Guidance,* Part 392.9.
https://www.fmcsa.dot.gov/regulations/title49/section/392.9

26. On September 7, 2017, the cargo (here, the Pallets) was not secured, bound, shrink-wrapped, or tied down in any way.

27. On September 7, 2017, the cargo (here, the Pallets) were caused to fall out of the Trailer and strike and injure the Plaintiff.

28. Upon information and belief, prior to Plaintiff's accident complained of herein, Niagara had received shipments from Millwood that were improperly loaded, tied down, immobilized, bound and/or secured.

29. Upon information and belief, prior to Plaintiff's accident complained of herein, Niagara had notice of the fact that Millwood was shipping unreasonably unsafe and improperly loaded and secured pallets to Niagara, which posed a danger to all employees, contractors, agents, and others.

30. Upon information and belief, prior to Plaintiff's accident complained of herein, Niagara had notice of the fact that Swift was transporting cargo from Millwood that was improperly loaded, tied down, immobilized, bound, and/or secured to Niagara, which posed a danger to employees, contractors, agents, and others.

31. At all times relevant hereto, each of the Defendants knew or should have known that cargo, including without limitation the Pallets, must be secured and immobilized because of the known risks and hazards associated with a load shifting while in transit.

32. At all times relevant hereto, each of the Defendants knew or should have known that securement devices are reasonable devices to prevent cargo, including, without limitation the Pallets, from falling out of the rear Trailer doors when such Trailer doors are opened.

## COUNT I
(Negligence – Swift)

33. Plaintiff repeats and realleges paragraphs 1-32 as if fully set forth herein.

34. At all relevant times hereto, Swift had a duty to inspect and ensure that the cargo load containing Pallets was properly loaded, tied down, immobilized, and/or secured in accordance with the applicable FMCSA regulations and guidelines.

35. At all relevant times hereto, Swift had a duty to inspect and ensure that the cargo load containing the Pallets was loaded, tied down, immobilized and/or secured in a reasonably safe manner.

36. Nevertheless, at that time and place, in breach and violation of these duties, Swift was guilty of one or more of the following negligent acts or omissions:

   a. Negligently and carelessly failed to ensure that the Pallets were properly and reasonably and safely loaded, secured, immobilized, contained, bound and/or tied down;

   b. Negligently and carelessly failed to ensure that the Pallets were properly reasonably and safely loaded, secured, immobilized, contained, bound and/or tied down so as to prevent them from tipping over or falling out of the Trailer when the Trailer doors are opened;

   c. Negligently and carelessly failed to arrange for supervision of the loading of the Pallets to determine compliance with proper cargo securement

regulations;

d. Negligently and carelessly failed to obtain notation on the connecting line freight bill that the lading was properly and reasonably loaded;

e. Negligently and carelessly failed to obtain approval to break the seal to permit inspection;

f. Negligently and carelessly failed to reexamine the cargo and its load securement devices during the course of transportation and make any necessary adjustment to the cargo or load securement devices, including adding more securement devices, to ensure that the cargo cannot shift on or within, or fall from, the trailer;

g. Otherwise failed to comply with other applicable rules and regulations of the Federal Motor Carrier Safety Administration;

h. Was otherwise negligent and careless in transporting the Millwood cargo to the Niagara Facility.

37. As a direct and proximate result of one or more of the above negligent acts and/or omissions of Swift, the Pallets that were transported by Swift were caused to fall out of the Trailer striking the Plaintiff, causing him to sustain severe, painful, and extensive injuries, such that he has suffered great and prolonged physical and mental pain and suffering, and that he was and will be kept from attending to his ordinary affairs, work, and other duties, and he became liable and will continue to become liable for great sums of money for hospital and medical care and treatment.

## COUNT II
(Negligence – Millwood)

38. Plaintiff repeats and realleges paragraphs 1-32 as if fully set forth herein.

39. On September 7, 2017, Millwood had a duty to properly and safely load the Trailer with Pallets.

40. On September 7, 2017, Millwood had a duty to properly and safely secure the Pallets within the Trailer.

41. Nevertheless, at that time and place, in breach and violation of these duties, Millwood was guilty of one or more of the following negligent acts or omissions:

   a. Negligently and carelessly failed to ensure that the Pallets were properly and reasonably and safely loaded, secured, immobilized, contained, bound and/or tied down;

   b. Negligently and carelessly failed to ensure that the Pallets were properly and reasonably and safely loaded, secured, immobilized, contained, bound and/or tied down so as to prevent them from tipping over or falling out of the Trailer when the Trailer doors were opened;

   c. Negligently and carelessly failed to arrange for supervision by Swift of the loading of the Pallets to determine compliance with proper cargo securement regulations;

   d. Negligently and carelessly failed to provide notation on the connecting line freight bill that the lading was properly loaded;

   e. Negligently and carelessly failed to provide approval to Swift to break the seal to permit inspection;

   f. Was otherwise negligent and careless in loading and

securing/immobilizing the cargo (Pallets).

42. As a direct and proximate result of one or more of the above negligent acts and/or omissions of Millwood, the Pallets that were transported by Swift fell out of the Trailer and onto the Plaintiff, causing him to sustain severe, painful, and extensive injuries, such that he has suffered great and prolonged physical and mental pain and suffering, and that he was and will be kept from attending to his ordinary affairs, work, and other duties, and he became liable and will continue to become liable for great sums of money for hospital and medical care and treatment.

### COUNT III
(Negligence – Niagara)

43. Plaintiff repeats and realleges paragraphs 1-32 as if fully set forth herein.

44. At all times relevant hereto, Niagara had a duty to ensure the safety of its contractors and agents, including the Plaintiff, by ensuring that Millwood and Swift were properly loading and securing the Pallets that were being shipped and transported to the Niagara Facility.

45. Nevertheless, at that time and place, in breach and violation of these duties, Niagara was guilty of one or more of the following negligent acts or omissions:

   a. Negligently and carelessly failed to ensure that it was receiving cargo from Millwood, including the Pallets, that was properly, reasonably and safely loaded, secured, immobilized, contained, bound and/or tied down;

   b. Negligently and carelessly failed to ensure that it was receiving cargo from Millwood, including the Pallets, that was properly, reasonably and safely loaded, secured, immobilized, contained, bound and/or tied down so as to prevent it from tipping over or falling out of the Trailer when the Trailer doors are opened;

c. Negligently and carelessly failed to require and arrange for supervision by Swift of the loading of the Pallets to determine compliance with proper cargo securement regulations;

d. Negligently and carelessly failed to take any corrective measures to fix or remedy the improper and unsafe cargo securement procedures that were occurring prior to Plaintiff's accident, so as to avoid future injury to its contractors or agents;

e. Negligently and carelessly failed to notify Millwood and Swift of the improper loading and securing of the cargo, including the Pallets, prior to Plaintiff's accident;

f. Negligently and carelessly failed to call any safety meetings with Millwood and/or Swift regarding proper and reasonable cargo securement;

g. Was otherwise negligent and careless in handling and receiving improperly and unreasonably loaded and secured/immobilized cargo, including the Pallets, from Millwood and Swift.

46. As a direct and proximate result of one or more of the above negligent acts and/or omissions of Niagara, the Pallets that were transported by Swift fell out of the trailer and on top of Plaintiff, causing him to sustain severe, painful, and extensive injuries, such that he has suffered great and prolonged physical and mental pain and suffering, and that he was and will be kept from attending to his ordinary affairs, work, and other duties, and he became liable and will continue to become liable for great sums of money for hospital and medical care and treatment.

WHEREFORE, Plaintiff, BRUCE HUBBARD, demands judgment against the Defendants SWIFT TRANSPORTATION CO. OF ARIZONA, LLC, MILLWOOD, INC. and

11
Case 2:18-cv-00329-WED   Filed 11/07/17   Page 11 of 12   Document 1

NIAGARA BOTTLING, LLC, for damages and expenses in an amount in excess of the jurisdictional limit of this Court, and for any other relief which this Court deems just and proper.

Plaintiff respectfully demands a jury trial as to all counts herein.

                                                    Respectfully submitted,

                                                    s/Arijana Keserovic
                                                    One of the attorneys for Plaintiff

Jeffrey Friedman
Arijana Keserovic
LAW OFFICE OF JEFFREY FRIEDMAN, P.C.
120 South State Street, Suite 400
Chicago, Illinois 60603
(312) 357-1431